2004 UT 49

**STATE of Utah, Plaintiff and Appellee,**

v.

**James W. MOONEY, aka James W.B.E. Mooney, Linda T. Mooney, and Oklevueha Earthwalks Native American Church of Utah, Inc., Defendants and Appellants.**

No. 20010787.

Supreme Court of Utah.

June 22, 2004.

Mark L. Shurtleff, Att'y Gen., Kris C. Leonard, Asst. Att'y Gen., Salt Lake City, and David H.T. Wayment, Provo, for plaintiff.

Kathryn Collard, Salt Lake City, for defendants.

PARRISH, Justice:

¶ 1 James and Linda Mooney, along with their church, the Oklevueha Earthwalks Native American Church (collectively, the "Mooneys"), have been charged by the State with multiple felony counts of "engag[ing] in a continuing criminal enterprise" and of engaging in a "pattern of unlawful activity" by possessing and distributing peyote, a controlled substance, to members and visitors in their religious services. The State also seeks forfeiture of the church's property in connection with this alleged criminal activity. The Mooneys moved to dismiss the charges, arguing that a federal regulatory exemption incorporated into Utah law permits them to use and distribute peyote in "bona fide religious ceremonies" because they are members of the Native American Church. The Mooneys also argued that if state law is not interpreted to permit their possession and use of peyote for religious purposes, their prosecution violates their constitutional right to freely exercise their religion, as well as their constitutional rights to due process and equal protection of the law.

¶ 2 The trial court rejected the Mooneys' arguments, holding that the Mooneys are not entitled to the protection of any exemption for the religious use of peyote because they are not members of a federally recognized Native American tribe. We reverse the trial court's decision, holding that Utah law incor-porates a federal regulation exempting from prosecution members of the Native American Church who use peyote in bona fide religious ceremonies. On its face, the federal regulation does not restrict the exemption to members of federally recognized tribes. We therefore rule that the exemption is available to all members of the Native American Church. Any other interpretation is not only inconsistent with the plain language of the exemption, but would fail to provide members of the Native American Church with constitutionally adequate notice that their religious use of peyote could expose them to criminal liability.

## BACKGROUND

### Regulation of Peyote

¶ 3 A cactus indigenous to the Rio Grande valley of southern Texas and northern Mexico, peyote contains mescaline, which can induce hallucinations and other psychedelic effects in those who consume it. There is a long tradition among some Native American groups of worshiping peyote and of consuming the cactus and experiencing its effects in religious ceremonies. *See Peyote Way Church of God, Inc. v. Thornburgh*, 922 F.2d 1210, 1212 (5th Cir.1991); *United States v. Boyll*, 774 F.Supp. 1333, 1335 (D.N.M.1991); *Native Am. Church v. United States*, 468 F.Supp. 1247, 1248 (S.D.N.Y.1979); *see also* Christopher Parker, Note and Comment, *A Constitutional Examination of the Federal Exemptions for Native American Religious Peyote Use*, 16 BYU J. Pub.L. 89, 89–94 (2001).

¶ 4 Congress first restricted the possession and sale of peyote in the Drug Abuse Control Amendments of 1965, and classified it as a Schedule I controlled substance in 1970. 21 U.S.C. § 812(c) Schedule I(c)(12) (2004); *Boyll*, 774 F.Supp. at 1338; *Native Am. Church*, 468 F.Supp. at 1249. In 1965 and again in 1970, there were efforts in Congress to enact an explicit statutory exception for the use of peyote in bona fide religious ceremonies. *Id.* These efforts did not succeed, but they led the Bureau of Narcotics and Dangerous Drugs, the predecessor to the agency now known as the Drug Enforcement Agency (the "DEA"), to promulgate a regula-

tory exemption for the religious use of peyote. *Id.* That exemption provides as follows:

The listing of peyote as a controlled substance in Schedule I does not apply to the nondrug use of peyote in bona fide religious ceremonies of the Native American Church, and members of the Native American Church so using peyote are exempt from registration. Any person who manufactures peyote for or distributes peyote to a Native American Church is required to register annually and to comply with all other requirements of law.

21 C.F.R. § 1307.31 (2004). Throughout this opinion, we will refer to this regulatory exemption as the Religious Peyote Exemption, or simply as the federal exemption.

¶ 5 The religious use of peyote in Native American religious ceremonies became a frequent topic of debate after the United States Supreme Court decided the case of *Employment Division, Department of Human Resources of Oregon v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). In *Smith,* the Court held that the state of Oregon did not violate the Free Exercise Clause of the First Amendment to the United States Constitution when it refused unemployment benefits to certain practitioners of Native American peyote religion who had been fired for illegally using peyote. *Id.* at 890, 110 S.Ct. 1595. The Court announced that a neutral law of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice. *Id.* at 878–80, 110 S.Ct. 1595.

¶ 6 The *Smith* decision generated a great deal of controversy and motivated Congress to legislate in response. *See generally* Michael W. McConnell, *Religious Freedom, Separation of Powers, and the Reversal of Roles,* 2001 BYU L.Rev. 611, 613–14. One of these responses was the adoption of the American Indian Religious Freedom Act Amendments (the "AIRFA Amendments") in 1994. These amendments were based on the following congressional findings:

The Congress finds and declares that—

(1) for many Indian people, the traditional ceremonial use of the peyote cactus as a religious sacrament has for centuries been integral to a way of life, and significant in perpetuating Indian tribes and cultures;

(2) since 1965, this ceremonial use of peyote by Indians has been protected by Federal regulation;

(3) while at least 28 States have enacted laws which are similar to, or are in conformance with, the Federal regulation which protects the ceremonial use of peyote by Indian religious practitioners, 22 States have not done so, and this lack of uniformity has created hardship for Indian people who participate in such religious ceremonies;

(4) the Supreme Court of the United States, in the case of *Employment Division v. Smith, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990),* held that the First Amendment does not protect Indian practitioners who use peyote in Indian religious ceremonies, and also raised uncertainty whether this religious practice would be protected under the compelling State interest standard; and

(5) the lack of adequate and clear legal protection for the religious use of peyote by Indians may serve to stigmatize and marginalize Indian tribes and cultures, and increase the risk that they will be exposed to discriminatory treatment.

42 U.S.C. § 1996a(a) (2004). On the basis of these findings, Congress directed that

[n]otwithstanding any other provision of law, the use, possession, or transportation of peyote by an Indian for bona fide traditional ceremonial purposes in connection with the practice of a traditional Indian religion is lawful, and shall not be prohibited by the United States or any State. No Indian shall be penalized or discriminated against on the basis of such use, possession or transportation, including, but not limited to, denial of otherwise applicable benefits under public assistance programs.

*Id.* § 1996a(b)(1). For the purposes of these provisions, Congress defined the term "Indian" to include members of "any tribe, band, nation, pueblo, or other organized group or community of Indians ... which is recognized as eligible for the special programs and

services provided by the United States to Indians because of their status as Indians." *Id.* § 1996a(c)(2).

### The Mooneys and the Native American Church

¶ 7 The Native American Church was formally established in Oklahoma in 1918. *Peyote Way*, 922 F.2d at 1212. The formation of this entity was motivated, at least in part, to protect the religious use of peyote from early attempts to suppress it. *Boyll*, 774 F.Supp. at 1336. The Native American Church has now grown to include many local branches or chapters, including, according to the Mooneys, the defendant Oklevueha Earthwalks Native American Church.

¶ 8 James Mooney claims to be a descendant of Native Americans, but is not a member of any federally recognized tribe. The Mooneys practiced Native American religion before founding their church, and provided religious programs and services to inmates of Utah correctional facilities, both as volunteers and, in Mr. Mooney's case, as an employee. James and Linda Mooney founded their Oklevueha Earthwalks Native American Church in April of 1997 in Benjamin, Utah. Because Texas is the only state in the nation in which peyote is grown, the Mooneys obtained peyote for use in their church services by registering and complying with the requirements of the Texas Department of Public Safety Narcotics Services.

### ANALYSIS

I. INCORPORATION OF THE RELIGIOUS PEYOTE EXEMPTION INTO THE UTAH CONTROLLED SUBSTANCES ACT

¶ 9 The first issue we address is whether the federal Religious Peyote Exemption has been incorporated into Utah law. The Utah Controlled Substances Act (the "Act") provides:

"Controlled Substance" means a drug or substance included in Schedules I, II, III, IV or V of [Utah Code] Section 58–37–4, and also includes a drug or substance included in Schedules I, II, III, IV, or V of the federal Controlled Substances Act, Title II, P.L. 91–513, or any controlled substances analog.

Utah Code Ann. § 58–37–2(1)(e)(i) (2002). While peyote is among the controlled substances listed in Schedule I of section 58–37–4 of the Utah Code, the preamble to Schedule I provides an exception for substances that are "specifically excepted" or "listed in another schedule." *Id.* § 58–37–4(2)(a)(iii) (2002). We must decide whether this qualifying language incorporates the federal Religious Peyote Exemption of 21 C.F.R. § 1307.31 into state law. This is a question of statutory interpretation that we review for correctness without deference to the conclusions of the trial court. *See Ward v. Richfield City*, 798 P.2d 757, 759 (Utah 1990).[1]

¶ 10 We hold that the federal exemption for the religious use of peyote in bona fide ceremonies of the Native American Church constitutes a "specific exception" to the listing of peyote as a controlled substance within the meaning of Utah Code section 58–37–4(2)(a)(iii). To interpret the statute otherwise would create a direct conflict with a preemptive federal law, and would raise substantial constitutional impediments to the State's prosecution of the Mooneys.

¶ 11 Our primary source of guidance in statutory interpretation is the plain and ordinary meaning of the statutory language. *Dick Simon Trucking, Inc. v. State Tax Comm'n*, 2004 UT 11, ¶ 17, 84 P.3d 1197. Unfortunately, the language of the Utah Controlled Substances Act fails to specify the source of the applicable exceptions. Although the Act explicitly provides that scheduled substances are controlled unless "specifically excepted," Utah Code Ann. § 58–37–4(2)(a)(iii) (2002), it does not address whether the contemplated exceptions are found in

---

**1.** The trial court did not expressly rule on this issue because it held that even if the Religious Peyote Exemption were incorporated into Utah law, the Mooneys would not qualify for it. This holding was based on an interpretation of the regulation that limited its applicability to members of federally recognized tribes. Like issues of statutory interpretation, we review the trial court's interpretation of a regulation for correctness, giving no deference to the trial court's conclusions. *See Brendle v. City of Draper*, 937 P.2d 1044, 1046 (Utah Ct.App.1997).

state statutes, state regulations, federal statutes, federal regulations, or some combination of these sources.[2] Similarly, although the Act states that scheduled substances are controlled "unless listed in another schedule," *id.* § 58–37–4(2)(a)(iii), it neither specifies the other contemplated schedules nor addresses the resolution of conflicts arising when a particular substance is listed as controlled on one schedule but listed as exempt under another schedule. In short, the statute does not address the situation presented here, where the substance in question is listed as a controlled substance under one of the state schedules but is listed as exempt under the federal schedules that have been incorporated by reference into the Utah Controlled Substances Act. *See id.* § 58–37–3. These omissions and inconsistencies render the statutory language ambiguous and require that we turn to other accepted principles of statutory construction.

### A. Preemption by the American Indian Religious Freedom Act Amendments

¶ 12 In construing statutes, we are obligated to "avoid interpretations that conflict with relevant constitutional mandates." *State v. Mohi,* 901 P.2d 991, 1009 (Utah 1995). This canon of interpretation has sometimes been couched as a recognition that "[w]e have a duty to construe statutes to avoid constitutional conflicts." *Provo City Corp. v. State,* 795 P.2d 1120, 1125 (Utah 1990); *see also State v. Lindquist,* 674 P.2d 1234, 1237 (Utah 1983) ("[I]t is the duty of this Court to construe a statute to avoid constitutional infirmities whenever possible. We must adopt that construction which will save the statute from constitutional infirmity." (quotation and citations omitted)).

¶ 13 The Supremacy Clause of the United States Constitution authorizes Congress to preempt state law in areas covered by federal legislation, rendering invalid any state statute that conflicts with a federal act of preemption. U.S. Const. art. VI, cl. 2; *Ray v. Atl. Richfield Co.,* 435 U.S. 151, 158,

98 S.Ct. 988, 55 L.Ed.2d 179 (1978). We therefore avoid interpreting an ambiguous state statute in a way that would render the statute invalid under an explicitly preemptive federal law. *See Martin v. City of Rochester,* 642 N.W.2d 1, 18 (Minn.2002) (interpreting a state statute to avoid conflicting with a preemptive federal law).

¶ 14 The AIRFA Amendments' prohibition on criminalizing the religious use of peyote constitutes a clear congressional act of preemption against the laws of any state that might otherwise prohibit the use of peyote for religious purposes by Native Americans, as the AIRFA Amendments define them. The AIRFA Amendments provide that "[n]otwithstanding any other ... law, the use, possession, or transportation of peyote by an Indian for bona fide traditional ceremonial purposes in connection with the practice of a traditional Indian religion ... shall not be prohibited by ... any State." 42 U.S.C. § 1996a(b)(1) (2004). Were we to hold that the Utah Controlled Substances Act does not incorporate the federal Religious Peyote Exemption, the Act would prohibit peyote use in all circumstances, thereby running afoul of the AIRFA Amendments. We therefore are persuaded to interpret the Utah Controlled Substances Act to have incorporated the exemption for the religious use of peyote found at 21 C.F.R. § 1307.31.

¶ 15 The State urges us to hold that the Utah Controlled Substances Act does not incorporate the federal exemption and suggests that we resolve the resulting preemption problem by holding that the AIRFA Amendments preempt Utah law only to the extent that Utah law criminalizes peyote use by members of federally recognized Native American tribes. This interpretation would leave Utah law available for prosecution of those religious peyote users, such as the Mooneys, who are not members of a federally recognized tribe. While the interpretation advocated by the State would facilitate the result it desires, such an interpretation nevertheless would require that we find the Utah Controlled Substances Act in conflict

---

**2.** All of these are possible sources of exemptions in light of the fact that the definition of "Controlled Substance" under the Utah Controlled

Substances Act includes substances scheduled under the federal Controlled Substances Act. Utah Code Ann. § 58–37–2(1)(e) (2002).

with federal law. We decline to do so in the face of an equally plausible interpretation that avoids any such conflict.

### B. Constitutional Guarantees of Due Process

¶ 16 The statutory interpretation urged by the State is also untenable because it raises a serious question as to whether the Mooneys' constitutional due process rights would be violated by a conviction. In this regard, we are again constrained by the principle of statutory construction counseling us to avoid interpretations that are inconsistent with constitutional guarantees.[3] *Mohi*, 901 P.2d at 1009; *Provo City Corp.*, 795 P.2d at 1125; *Lindquist*, 674 P.2d at 1237.

¶ 17 Both the United States and Utah Constitutions protect citizens from deprivation of liberty or property absent due process of law. U.S. Const. amends. V & XIV, § 1; Utah Const. art. I, § 7. The Utah Controlled Substances Act imposes substantial criminal penalties on those found guilty of violating its provisions. Our constitutional guarantees of due process require that penal statutes define criminal offenses "with sufficient definiteness that ordinary people can understand what conduct is prohibited." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); *State v. MacGuire*, 2004 UT 4, ¶¶ 13–14, 84 P.3d 1171; *see also In re Discipline of Sonnenreich*, 2004 UT 3, ¶ 37, 86 P.3d 712 ("Utah's constitutional guarantee of due process is substantially the same as the due process guarantees contained in the ... United States Constitution." (quotations and citations omitted)). These guarantees do not permit enforcement of a statute that forbids an act "in terms so vague that [persons] of common intelligence must necessarily guess at [the statute's] meaning and differ as to its application." *United States v. Lanier*, 520 U.S. 259, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) (quotations and citations omitted); *see also MacGuire*, 2004 UT 4 at ¶ 14, 84 P.3d 1171.

¶ 18 Because the Utah Controlled Substances Act does not clearly specify whether it incorporates the Religious Peyote Exemption, a holding that the exemption does not apply would give rise to serious constitutional claims under the due process clauses of the federal and state constitutions. The ambiguity in the statute is such that the scope of its peyote prohibition cannot be decisively interpreted by lawyers, to say nothing of citizens untrained in the law. This weighs strongly against any interpretation that would enable the State to initiate criminal prosecution based on arguably legitimate conduct.

¶ 19 In summary, we interpret the Utah Controlled Substances Act to have incorporated the Religious Peyote Exemption found at 21 C.F.R. § 1307.31. This interpretation avoids a conflict with the preemptive AIRFA Amendments. It also avoids the constitutional due process claims that would be created by allowing the State to prosecute the Mooneys under a statute that may reasonably be read to have permitted their religious activities.

## II. INTERPRETING THE PEYOTE EXEMPTION IN UTAH LAW

¶ 20 Having held that the federal exemption for religious peyote use is incorporated into Utah law, we must decide whether the terms of the exemption protect the Mooneys from prosecution. This task requires that we look first at the plain meaning of the regulatory language, and give effect to that meaning unless the language is ambiguous. *Thomas v. Color Country Mgmt.*, 2004 UT 12 ¶ 9, 84 P.3d 1201.

### A. The Plain Meaning of the Religious Peyote Exemption

¶ 21 The State argues that the Religious Peyote Exemption is available only to members of federally recognized Native American tribes. The Mooneys contend that the exemption is not so limited. The exemption states that it applies to "members of the

---

3. All of the constitutional analysis in this opinion is in the context of our attempt to interpret the statute and its incorporated regulation. Because we interpret the statute and incorporated regula-

tion in a manner that avoids the constitutional issues raised by the Mooneys, we need not and do not consider the merits of the Mooneys' constitutional claims.

Native American Church," provided such members are using peyote in bona fide religious ceremonies. James Mooney asserts that his church is one of many chapters or churches that make up the Native American Church, that the peyote was used in bona fide religious ceremonies and that, in acquiring peyote from Texas, his church has registered and otherwise followed the applicable regulations of the Texas Department of Public Safety and the United States DEA. These assertions remain unchallenged on appeal.

¶ 22 Because the text of the exemption is devoid of any reference to tribal status, we find no support for an interpretation limiting the exemption to tribal members. *See Boyll,* 774 F.Supp. at 1338 (holding that under the plain language of the federal Religious Peyote Exemption, the exemption applies to all members of the Native American Church, regardless of any tribal affiliation). The term "members" in the exemption clearly refers to members of the "Native American Church"—not to members of federally recognized tribes. Therefore, so long as their church is part of "[t]he Native American Church," the Mooneys may not be prosecuted for using peyote in bona fide religious ceremonies.

### B. Deference to the Federal Agency's Interpretation

■ ¶ 23 In arguing that we should limit the applicability of the Religious Peyote Exemption to members of federally recognized tribes, the State maintains that we should defer to the interpretation of the DEA, the successor to the federal agency that promulgated the exemption. The State argues that the DEA applies the federal exemption only to members of federally recognized tribes.

■ ¶ 24 We will defer to an agency's interpretation of its own regulation only if it is a reasonable interpretation of the regulatory language. Indeed, the United States Supreme Court has required that federal courts defer to the regulatory interpretation of a federal agency only if the language of the regulation "is not free from doubt" and if the

interpretation is "reasonable" and "sensibly conforms to the wording and purpose" of the regulation. *Martin v. Occupational Safety & Health Review Comm'n,* 499 U.S. 144, 150–51, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991) (citations and quotations omitted). No deference is otherwise required.

■ ¶ 25 Whether a federal court must defer to the regulatory interpretation of a federal agency presents a different question from whether a state court is required to defer to a federal agency's interpretation of a federal regulation incorporated into state law. In the latter case, although we are free to consider the interpretation of a federal agency, we have no obligation to defer to that interpretation. In this case, in view of the plain language of the federal exemption and the due process concerns raised by the prosecution of Native American Church members whose activities fall within its plain language, we will not defer to any agency interpretation that would limit the federal exemption to members of federally recognized tribes.

### C. Federal Policy Toward Native Americans

¶ 26 Finally, the State argues that an interpretation extending the federal exemption to members of the Native American Church who are not members of federally recognized tribes would violate the United States Constitution's Equal Protection Clause, because the exemption would be a religion-based preference permitting members of a particular church, and not others, to use peyote in religious ceremonies. The State maintains that an exemption for members of federally recognized tribes can survive constitutional scrutiny because it is a political preference designed to preserve tribal culture, rather than a constitutionally suspect racial preference.[4]

¶ 27 The State relies on *Peyote Way,* 922 F.2d at 1212, where the Fifth Circuit Court of Appeals held that the federal Equal Protection Clause permits the Religious Peyote Exemption's preference for Native American

---

4. *See Adarand Constructors, Inc. v. Pena,* 515 U.S. 200, 227, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995) (holding that equal protection jurispru-

dence requires the application of "strict scrutiny" to all racial classifications).

Church members because of the federal government's unique political relationship with Native American tribes, and that the Equal Protection Clause does not require that the exemption be extended to religious peyote users who are neither Native American Church members nor members of federally recognized tribes. *See also* U.S. Const. art. VIII, § 8, cl. 3 (giving Congress the power to regulate commerce with the "Indian Tribes"); *Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974) (recognizing the "unique legal status" of Native American tribes with respect to the federal government). The State therefore urges a regulatory interpretation that would limit the peyote exemption to members of federally recognized tribes, because a preference for such tribe members receives deference under the Supreme Court's equal protection jurisprudence.

¶ 28 These arguments do not persuade us to interpret the Religious Peyote Exemption in a way that contravenes the plain meaning of its terms. It is particularly important, as a safeguard for our citizens' due process rights, for us to remain faithful to the plain language of a statute when it would impose criminal penalties on those who violate it. While the constitutional arguments advanced by the State may be relevant to our statutory analysis, they are speculative and remote when compared with the tangible due process claims that the Mooneys would have were they to be prosecuted in violation of the plain language of the exemption.[5]

¶ 29 We also recognize that this case involves a prosecution under state, rather than federal, law. It is by no means clear that the federal government's duties to Native Americans, *see Mancari,* 417 U.S. at 551, 94 S.Ct. 2474, would legitimize state efforts to limit religious preferences to members of federally recognized Native American tribes. It is similarly unclear whether an interpretation that extended the religious peyote exemption

to only some members of the Native American Church would survive scrutiny under article I, section 4 of the Utah Constitution, which provides that "the State shall make no law respecting an establishment of religion or prohibiting the free exercise thereof." Accordingly, despite the State's argument that some hypothetical equal protection claims might be leveled against the plain language interpretation we adopt today, we are constrained to interpret the incorporated regulation according to its plain meaning.

## CONCLUSION

¶ 30 We reverse the decision of the district court. We hold that the federal Religious Peyote Exemption found at 21 C.F.R. § 1307.31 has been incorporated into the Utah Controlled Substances Act. Although the statutory language governing incorporation is ambiguous, we interpret the Act in a manner that avoids a conflict with federal law and does not risk depriving the Mooneys of their constitutional rights to due process.

¶ 31 In interpreting the reach of the federal exemption as incorporated into Utah law, we rely on its plain language, electing not to defer to a contrary interpretation that the State argues has been adopted by the federal DEA. On its face, the exemption applies to members of the Native American Church, without regard to tribal membership. The bona fide religious use of peyote cannot serve as the basis for prosecuting members of the Native American Church under state law. We remand for reconsideration of the Mooneys' motion to dismiss in light of this opinion.

¶ 32 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice NEHRING concur in Justice PARRISH'S opinion.

---

**5.** Any equal protection claims arising from our plain language interpretation of the regulatory exemption would not belong to the State, but rather to religious peyote users who are not members of the Native American Church. *Cf. Peyote Way,* 922 F.2d at 1212–21 (considering the equal protection claim of religious peyote users

who were neither Native American tribe members nor Native American Church members). Because none of the parties to this proceeding fall within this category, the State's reliance on this equal protection argument is speculative at best.