2007 UT App 296

Carolyn A. OLSEN, Petitioner, Appellee,
and Cross-appellant,

v.

Mark K. OLSEN, Respondent, Appellant,
and Cross-appellee.

No. 20060687–CA.

Court of Appeals of Utah.

Sept. 13, 2007.

Robert L. Neeley, Ogden, for Appellant and Cross-appellee.

Martin W. Custen, Ogden, for Appellee and Cross-appellant.

Before GREENWOOD, Associate P.J., BILLINGS and THORNE, JJ.

## OPINION

GREENWOOD, Associate Presiding Judge:

¶ 1 Carolyn Olsen (Wife) appeals from a divorce judgment, contending that the trial court erred in categorizing her anticipated social security benefits as a marital asset subject to division. Her ex-husband, Mark Olsen (Husband), cross-appeals, claiming that the trial court erred by including health insurance coverage for the couple's two adult children in Wife's standard of living, and by denying Husband's motion for a new trial based on newly discovered evidence. We affirm in part, and reverse and remand in part.

## BACKGROUND

¶ 2 During Husband and Wife's twenty-five-year marriage, Wife worked as a school teacher for the Weber County School District, and Husband worked as a civil service employee at Hill Air Force Base. At the dissolution of the marriage, Wife, age fifty-two, earned $48,491 gross per year, while Husband, age fifty-five, earned $104,987 gross per year. The parties' two children were twenty-one and eighteen at the time of the divorce.

¶ 3 Along with their home, two cabins, and other assets, the parties had five retirement plans. Wife had three: (1) a pension plan with the Utah State Retirement System (USRS), valued at $479,121; (2) a 401(k) plan with USRS, valued at $119,519; and (3) federal social security, valued at $115,435. An accountant testified at trial that he based the $115,435 present value of Wife's social security benefits on Wife living to her anticipated life expectancy, meeting all the requirements of social security, and surviving thirteen additional years until she was age sixty-five. Wife contributed $216.03 per month from her salary to social security. During the term of the marriage, Wife contributed a total of $53,196 to social security.

¶ 4 Husband had two retirement plans: (1) a thrift savings plan, valued at $93,639; and (2) a pension plan to which he contributed in lieu of social security called the Civilian Service Retirement System Plan (CSRS), valued at $897,804. Husband contributed $610 per month to his CSRS retirement plan.

¶ 5 The trial court ordered that each party receive half the benefits accrued during marriage of Husband's CSRS account ($897,804) and Wife's USRS pension ($479,121). The trial court included, as marital assets, Husband's thrift account ($93,639), Wife's 401(k) account ($119,519), and the present value of Wife's social security benefits ($115,435). Wife appeals only the inclusion of her social security account as a marital asset. In dividing the marital assets, the trial court stated in its conclusions of law, "Since there is no established controlling law, the Court determines [Wife's] social security benefits are a marital asset and therefore credits her with $115,435.24 of marital property, the present fair market value of her social security." Taking into consideration the present value of these social security benefits, as well as both parties' other marital assets, the trial court ordered Wife to pay Husband $9421 at the sale of the marital residence to equalize the parties' marital assets.

¶ 6 In addition to dividing the marital assets, the trial court made findings regarding alimony. The trial court found that Wife's total monthly living expenses, necessary to maintain the standard of living to which she had grown accustomed during the marriage, were $3920. Because Wife had "always maintained the family medical insurance and insuring their children has become a part of the standard of living of the parties," the trial court approved, as part of Wife's monthly expenses, $556 per month in health insurance coverage for Wife and the couple's two children as long as the children were eligible to receive insurance under Wife's insurance plan. Taking into consideration Wife's monthly income, plus rental income from two cabins, the trial court found that Wife's monthly financial shortfall was $862. The trial court found Husband had monthly living expenses of $4255, and had the ability, based on his income, to pay $1010 per month in alimony. The trial court ordered Husband to pay $862 per month in alimony for twenty-six years and nine months, unless Wife remarried, co-habitated, or either party died. Several months after trial, Wife's health insurance costs for herself and the two children were reduced from $556 to $74 per month. After entry of the divorce decree and judgment, Husband filed a motion for new trial and to alter or amend the judgment, seeking a reduction in alimony premised on the reduction in Wife's health insurance costs.

## ISSUES AND STANDARDS OF REVIEW

¶ 7 Wife claims the trial court erred in treating her federal social security benefits as a "marital asset" because Congress has preempted the state's divorce laws related to social security. Decisions regarding whether a state law has been preempted by federal law are reviewed for correctness "without deference to the conclusions of the trial

court." *State v. Mooney*, 2004 UT 49, ¶¶ 9–10, 98 P.3d 420; *see also Utah Dep't of Human Servs. v. Hughes*, 2007 UT 30, ¶¶ 3, 15, 156 P.3d 820. "Application of statutory law to the facts presents a mixed question of fact and law. We review the [trial court's] findings for clear error and its conclusions of law for correctness, affording the court some discretion in applying the law to the facts." *E.B. v. State*, 2002 UT App 270, ¶ 11, 53 P.3d 963 (quotations omitted).

■■■ ¶ 8 Husband cross-appeals, claiming the trial court erred as a matter of law in including the cost of maintaining health insurance coverage for the couple's two adult children in its alimony award. "In a divorce proceeding, the trial court may make such orders concerning property distribution and alimony as are equitable. The trial court has broad latitude in such matters, and orders distributing property and setting alimony will not be lightly disturbed." *Jones v. Jones*, 700 P.2d 1072, 1074 (Utah 1985) (citation omitted). Therefore, we review alimony awards under an abuse of discretion standard. *See id.*

■■■ ¶ 9 Husband also claims that the trial court exceeded the scope of its discretion in denying Husband's motion for a new trial based on newly discovered evidence related to the reduced cost of Wife's health insurance. "Rulings on motions for a new trial are addressed to the sound discretion of the trial court, and its decision will be reversed on appeal only for a clear abuse thereof." *Hancock v. Planned Dev. Corp.*, 791 P.2d 183, 184–85 (Utah 1990) (footnotes and citations omitted).

1. Marital assets were defined in *Jefferies v. Jefferies*, 895 P.2d 835, 837 (Utah Ct.App.1995), as "functionally ... any right that has accrued during the marriage to a present or future benefit."

2. The only Utah appellate decision to touch on this issue is *Jefferies*, where this court held that retirement funds accumulated in a 401(a) plan during marriage, in lieu of participating in federal social security, *were* marital assets subject to division in a divorce action. *See id.* at 838. After observing that "consideration of expected social security benefits as marital assets is not directly at issue in this case," in dicta this court said,

## ANALYSIS

### I.  Social Security Benefits

¶ 10 Wife appeals the trial court's ruling that Utah state courts may consider the present value of a spouse's social security benefit to be a marital asset[1] subject to division upon divorce. Specifically, Wife argues that social security benefits cannot be classified as marital property because Congress's enactment of the Social Security Act preempted the states' divorce laws regarding social security benefits. *See* 42 U.S.C. § 407(a) (2000). Husband, in contrast, urges that Utah courts have considerable discretion concerning property division in divorce proceedings, and that considering the present value of Wife's social security benefits was within the proper exercise of that discretion. Husband also argues that Congress prohibits only the direct division of social security benefits, but does not prohibit a court from considering the benefits in fashioning an equitable distribution of marital property.

¶ 11 While other state appellate courts have decided how social security benefits should be characterized and considered upon divorce, this is an issue of first impression in Utah.[2] As we explain below, we hold that Congress has preempted state trial courts from including social security benefits as a marital asset; however, trial courts may consider social security benefits in relation to all joint and separate marital assets in seeking to ensure that "property be fairly divided between the parties, given their contributions during the marriage and their circumstances at the time of the divorce." *Newmeyer v. Newmeyer*, 745 P.2d 1276, 1278 (Utah 1987). Therefore, we conclude that the trial court

Unlike the § 401(a) plan here, social security benefits have no present asset value. They do not vest in any meaningful way until one meets age and other requirements imposed by federal law. Contributions toward social security cannot be withdrawn, borrowed against, assigned, given away, or otherwise treated as a present asset. Clearly, any other form of "right" or "plan" that is similarly unavailable prior to retirement would also not be a marital asset for purposes of pre-retirement division or distribution.

*Id.* at 838 n. 2.

incorrectly classified Wife's social security benefits as a marital asset, and consequently, the division of property must be reconsidered on remand.

### A. The Proper Classification of Social Security Benefits

■ ¶ 12 We first address Wife's argument that "courts may not consider social security benefits as a marital asset divisible in domestic relations proceedings because Congress's enactment of the Social Security Act preempted state divorce laws." The federal law at issue here, section 407(a) of the Social Security Act, provides:

> The right of any person to any future payment under this title shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this title shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407(a). Congress has authorized an exception to this prohibition against the transfer or assignment of social security benefits in order to allow for the collection of child support and alimony.[3] *See* 42 U.S.C. § 659(a) (2000). Congress explicitly excluded from the child support and alimony exception "any community property settlement, equitable distribution of property, or other division of property between spouses or former spouses." *Id.* § 659(i)(3)(B)(ii) (2000). Congress has also provided certain benefits for divorced spouses married more than ten

years, who also fulfill other statutory requirements. *See id.* § 402(b)-(c) (2000). Wife argues that these provisions, inter alia, demonstrate "Congress's intention to preempt state divorce laws."

■ ¶ 13 We agree that the Social Security Act preempts Utah law and prevents a Utah court from classifying Wife's social security benefits as marital property. "The Supremacy Clause of the United States Constitution authorizes Congress to preempt state law in areas covered by federal legislation, rendering invalid any state statute that conflicts with a federal act of preemption." *State v. Mooney*, 2004 UT 49, ¶ 13, 98 P.3d 420; *see also Utah Dep't of Human Servs. v. Hughes*, 2007 UT 30, ¶ 25, 156 P.3d 820 ("State law is also preempted to the extent that it actually conflicts with federal law."). Here, the trial court was not acting pursuant to a state statute because no state statute addresses treatment of social security benefits in a divorce. However, the trial court's classification of Wife's social security benefits as a marital asset was incompatible with, and contrary to, the Social Security Act. *See* 42 U.S.C. § 407(a).

¶ 14 Other state courts that have considered this question agree, and "have universally acknowledged that Social Security benefits are not marital property and are not subject to division in divorce actions." *Depot v. Depot*, 2006 ME 25, ¶ 6 & n. 2, 893 A.2d 995, 998 (citing, among others, cases from Arizona, Arkansas, Colorado, Nevada, Oregon, and Washington).[4] Having concluded that the Social Security Act precluded the trial court from classifying and dividing

---

**3.** The Supreme Court explained this exception: Concerned about [social security] recipients who were evading support obligations and thereby throwing children and divorced spouses on the public dole, Congress amended the Social Security Act by adding a new provision . . . to the effect that, notwithstanding any contrary law, federal benefits may be reached to satisfy a legal obligation for child support or alimony.

*Hisquierdo v. Hisquierdo*, 439 U.S. 572, 576, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979).

**4.** *See, e.g., Kelly v. Kelly*, 198 Ariz. 307, 9 P.3d 1046, 1047 (2000) (holding that Social Security benefits may not be divided as community property); *Skelton v. Skelton*, 339 Ark. 227, 5 S.W.3d 2, 4 (1999) ("Congress has excluded from its

definition of marital property any benefits from social security."); *In re Marriage of Morehouse*, 121 P.3d 264, 265 (Colo.Ct.App.2005) ("[A] trial court cannot distribute or divide Social Security benefits as marital property"); *Wolff v. Wolff*, 112 Nev. 1355, 929 P.2d 916, 921 (1996) ("[S]ocial security benefits, or the payments used to derive those benefits, cannot be divided in a property settlement agreement."); *In re Marriage of Swan*, 301 Or. 167, 720 P.2d 747, 750 (1986) ("Including the value of social security benefits of the spouses in a division of marital property . . . is contrary to the Social Security Act."); *In re Marriage of Zahm*, 138 Wash.2d 213, 978 P.2d 498, 502 (1999) ("[F]ederal statutes secure social security benefits as the separate indivisible property of the spouse who earned them.").

Wife's social security benefits as a marital asset, we now consider Husband's argument that the trial court may consider Wife's expected social security benefits when fashioning an equitable property division.

## B. Consideration of Social Security Benefits

¶15 State appellate courts that have addressed consideration of social security benefits in a divorce action have generally begun with an analysis of *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979), where the Supreme Court interpreted a section of the Railroad Retirement Act of 1974, that was designed to operate similarly to section 407(a) of the Social Security Act. *See, e.g., In re Marriage of Brane*, 21 Kan. App.2d 778, 908 P.2d 625, 627 (1995). The Railroad Retirement Act "was amended several times to make it conform more closely to the existing Social Security Act.... Like Social Security, and unlike most private pension plans, railroad retirement benefits are not contractual. Congress may alter, and even eliminate, them at any time." *Hisquierdo*, 439 U.S. at 575, 99 S.Ct. 802.

¶16 At issue in *Hisquierdo* was whether the wife in the community property state of California was entitled to a share of the railroad retirement benefits that would be due to her husband upon his retirement. *See id.* at 578, 99 S.Ct. 802. Reversing the Supreme Court of California, the United States Supreme Court concluded that treating the husband's railroad retirement benefits as community property subject to division at divorce conflicted with federal law. *See id.* at 590–91, 99 S.Ct. 802. The Supreme Court also held that using other assets to offset expected railroad retirement benefits violated the Railroad Retirement Act. *See id.* at 588–90, 99 S.Ct. 802. "An offsetting award ... would upset the statutory balance and impair [the husband's] economic security just as surely as would a regular deduction from his benefit check." *Id.* at 588, 99 S.Ct. 802. The Court based part of its rationale upon the fact that the husband might never receive the benefits if Congress altered or eliminated them, or if the husband quit to work for a different employer before he retired. *See id.* at 589, 99 S.Ct. 802. "If, for example,

a nonemployee spouse receives offsetting property, and then the employee spouse dies before collecting any benefits, the employee's heirs or beneficiaries suffer to the extent that the offset exceeds the lump-sum death benefits the Act provides." *Id.*

¶17 Several state courts have distinguished the importance of the holding in *Hisquierdo* for equitable division states (such as Utah) based upon the different philosophies animating divorce law in community property and equitable division states. *See, e.g., In re Marriage of Brane*, 908 P.2d at 628 (affirming the right to consider social security benefits in the overall property distribution). For example,

> Although the applicability of *Hisquierdo* ... to community property states was clear, the effect of th[at] decision ... upon equitable division states was much less certain.
>
> ....
>
> ... There is a significant theoretical difference between Kansas law and community property law since in Kansas the court has discretion to award marital property entirely to one party so long as the overall division is fair. Property acquired during the marriage may continue to be identified as that of one party although the other party to the divorce will have the right to some offsetting value accomplished either within the property division or by the award of alimony.

*Id.* at 627–28 (quotations omitted).

¶18 Many other state courts agree in limiting the applicability of *Hisquierdo*. At least nine states, specifically Colorado, Kansas, Iowa, Maine, Massachusetts, Missouri, Ohio, South Dakota, and Washington, allow consideration of social security benefits when fashioning a property division, although they do not classify and divide the social security benefits as marital property. *See In re Marriage of Morehouse*, 121 P.3d 264, 266, 267 (Colo.Ct.App.2005); *In re Marriage of Boyer*, 538 N.W.2d 293, 295–96 (Iowa 1995); *In re Marriage of Brane*, 908 P.2d at 626; *Depot v. Depot*, 2006 ME 25, ¶¶ 10, 14–15, 893 A.2d 995, 999–1001; *Mahoney v. Mahoney*, 425 Mass. 441, 681 N.E.2d 852, 856 (1997); *Holt v. Holt*, 976 S.W.2d 25, 28 (Mo.Ct.App.

1998); *Neville v. Neville,* 99 Ohio St.3d 275, 2003–Ohio–3624, 791 N.E.2d 434, at ¶ 12; *Johnson v. Johnson,* 2007 SD 56, ¶ 27, 734 N.W.2d 801; *In re Marriage of Zahm,* 138 Wash.2d 213, 978 P.2d 498, 502–03 (1999). These state courts do not see their approach as running afoul of the Social Security Act. *See, e.g., Depot,* 2006 ME 25 at ¶ 15, 893 A.2d 995 ("A divorce court's consideration of a spouse's anticipated or actual Social Security benefit payments as a relevant factor … does not represent a transfer or assignment of 'the right of any person to any future payment …' in violation of the Social Security Act's anti-assignment provision." (quoting 42 U.S.C. § 407(a))); *see also In re Marriage of Zahm,* 978 P.2d at 502 ("[W]hile the anti-reassignment clause of the Social Security Act precludes a trial court from directly dividing social security …, a trial court may still properly consider a spouse's social security income within the more elastic parameters of the court's power to formulate a just and equitable division of the parties' marital property.").

¶ 19 The Supreme Judicial Court of Maine explained its rationale for considering social security benefits in the overall property distribution, based on the reality that social security benefits may change an individual's financial status in retirement:

> The court's role in property division is to accomplish a just division that takes into account all relevant factors. Just as few married couples engaged in a serious assessment of their retirement resources would ignore the availability of Social Security benefits, courts should not be required to ignore reality and fashion a distributive award of the parties' retirement and other marital assets divorced from the actual economic circumstances of each spouse at the time the division of property is to become effective. Failing to consider Social Security benefit payments a spouse can reasonably be expected to receive in the near future may result in a distorted picture of that spouse's financial needs,

and, in turn, an inequitable division of the marital property.

*Depot,* 2006 ME 25, at ¶ 17, 893 A.2d 995 (citations, internal quotation marks, and footnotes omitted); *see also id.* at ¶ 18 (authorizing the trial court to consider whether the parties would likely be receiving social security in the "foreseeable future" and "whether the anticipated benefit payments are a substantial financial consideration when viewed in relation to the retirement assets and other sources of income that will be available to each spouse following the divorce").

¶ 20 Similarly, the Ohio appellate court considered that both spouses contributed to the marriage partnership that made it possible for one spouse to acquire social security benefits:

> [A] justification for considering these benefits is that a spouse's social security contributions and ultimate benefits have been increased by the work of the other spouse, and … that a nonemployed spouse loses spending power after a divorce through the inability to use the other spouse's social security benefits.

*Neville,* 99 Ohio St.3d 275, at ¶ 10, 791 N.E.2d 434 (omission in original) (internal quotation marks and citations omitted). The Colorado Court of Appeals described expected social security benefits as "a relevant economic circumstance similar to the fact that a spouse has an inheritance or a greater earning capacity which may justify an unequal distribution of marital property in the interests of justice." *In re Marriage of Morehouse,* 121 P.3d 264 at 267.

¶ 21 In contrast, the Nebraska Supreme Court stated in a 2006 opinion that several states, including Florida, Illinois, Nevada, North Dakota, and Tennessee, read *Hisquierdo* as "instructing them that Social Security is not subject to an indirect adjustment through offset." *Webster v. Webster,* 271 Neb. 788, 716 N.W.2d 47, 54 (2006); [5] *see, e.g., Wolff v. Wolff,* 112 Nev. 1355, 929 P.2d 916, 921 (1996) ("Considering [the wife's] social security benefits does not change the fact

---

**5.** Citing, inter alia, *Johnson v. Johnson,* 726 So.2d 393, 395–96 (Fla.Dist.Ct.App.1999); *In re Marriage of Crook,* 211 Ill.2d 437, 286 Ill.Dec. 141, 813 N.E.2d 198, 205 (2004); *Wolff,* 929 P.2d at 921; *Olson v. Olson,* 445 N.W.2d 1, 11 (N.D.1989); and *Reymann v. Reymann,* 919 S.W.2d 615, 617 (Tenn.Ct.App.1995).

that this is still an offset, and therefore, error." (internal quotation marks omitted)). The Illinois Supreme Court explained its rationale:

> Instructing a trial court to "consider" Social Security benefits, as the appellate court ·did in this case, either causes an actual difference in the asset distribution or it does not. If it does not, then the "consideration" is essentially without meaning. If it does, then the monetary value of the Social Security benefits the spouse would have received is taken away from that spouse and given to the other spouse to compensate for the anticipated difference. This works as an offset meant to equalize the property distribution.

*In re Marriage of Crook*, 211 Ill.2d 437, 286 Ill.Dec. 141, 813 N.E.2d 198, 205 (2004).

¶ 22 The issue before us presents a difficult question, as demonstrated by the division among other state courts. We are persuaded by the reasoning of the majority of state courts that have considered the issue, and hold that the Social Security Act does not require us to turn a blind eye to a spouse's anticipated social security income in fashioning an equitable remedy at divorce. We adopt the majority's interpretation of *Hisquierdo* as not prohibiting this approach.

¶ 23 Utah statutory law provides for "equitable orders relating to the ... property" of divorcing spouses. Utah Code Ann. § 30–3–5(1) (Supp.2007); *see also Rosendahl v. Rosendahl*, 876 P.2d 870, 874 (Utah Ct. App.1994) (stating that the court has the power to distribute marital property "in an equitable manner" and need not "consider property division in isolation"). In Utah, marital property is ordinarily divided equally between the divorcing spouses and separate property, which may include premarital assets, inheritances, or similar assets, will be awarded to the acquiring spouse. *See Bradford v. Bradford*, 1999 UT App 373, ¶ 23, 993 P.2d 887 ("property acquired by one spouse by gift and inheritance during the marriage [should be awarded] to that spouse" (alteration in original) (internal quotations marks omitted)); *Haumont v. Haumont*, 793 P.2d 421, 424 (Utah Ct.App.1990) (noting premarital property generally retained by acquiring

spouse). Nevertheless, a trial court " 'may, in the exercise of its broad discretion, divide the property equitably, regardless of its source or time of acquisition.' " *Oliekan v. Oliekan*, 2006 UT App 405, ¶ 28, 147 P.3d 464 (quoting *Haumont*, 793 P.2d at 424 n. 1).

¶ 24 The right to receive social security benefits in the future, like the receipt of separate property, may be considered by the trial court and may lead the trial court to conclude an equal division of marital property is not equitable under the circumstances. We therefore hold that the trial court in a divorce proceeding may consider the reasonable likelihood that a spouse may receive or is receiving social security income. The trial court here ran afoul of the Social Security Act by classifying Wife's social security benefits as marital property. This initial designation may have affected the trial court's property and alimony rulings because "[e]ach party is presumed to be entitled to all of his or her separate property and fifty percent of the marital property." *Burt v. Burt*, 799 P.2d 1166, 1172 (Utah Ct.App. 1990).

¶ 25 On remand, we instruct the trial court not to classify Wife's social security benefits as marital property. ·However, the trial court may take them into consideration in equitably adjusting the division of marital and non-marital property. We caution, however, that the trial court may not treat social security benefits in a manner that is tantamount to treating the benefits as a marital asset. Given the Social Security Act's prohibition against application of "legal process," 42 U.S.C. § 407(a), the benefits should be addressed similarly to separate assets, such as premarital property or inheritances, only in order to achieve overall equity. Furthermore, the trial court. should set forth its reasons for considering social security benefits in its property distribution decision. In making this determination, the reasoning from *Burt v. Burt*, 799 P.2d 1166 (Utah Ct.App.1990), may be helpful:

> The overriding consideration is that the ultimate division be equitable—that property be fairly divided between the parties given their contributions during the mar-

riage and their circumstances at the time of the divorce. On remand, the court should first properly categorize the parties' property as part of the marital estate or as the separate property of one or the other. Each party is presumed to be entitled to all of his or her separate property and fifty percent of the marital property. But rather than simply enter such a decree, the court should then consider the existence of exceptional circumstances and, if any be shown, proceed to effect an equitable distribution in light of those circumstances and in conformity with our decision.

*Id.* at 1172 (citations and internal quotation marks omitted). We also believe that the trial court should take into consideration the age of the parties, the likely timing of the receipt of social security benefits, and the fact that social security benefits are contingent on living to the age of eligibility and cannot be otherwise treated as "a present asset." *Jefferies v. Jefferies,* 895 P.2d 835, 838 n. 2 (Utah Ct.App.1995).

¶ 26 In sum, the trial court erred in classifying and dividing Wife's social security benefits as marital property. On remand the trial court may, however, consider the benefits along with all other marital circumstances in fashioning its property award.

## II. Health Insurance as a Standard of Living Expense

■ ¶ 27 In Husband's cross-appeal, he argues that the trial court erred as a matter of law in including the cost of maintaining health insurance for the parties' two adult children within Wife's standard of living. The trial court included the $556 per month family premium as part of Wife's monthly needs. Husband claimed that "[Wife's] standard of living[ ] never really included providing health insurance coverage for adult children."

■ ¶ 28 We agree with Wife that the trial court did not abuse its discretion in recognizing that the parties had always maintained health insurance for their now majority-aged-children and that the insurance expense was part of both Husband and Wife's established standard of living. Wife testified that she had always maintained health insur-

ance for the family. "As a general rule, the court should look to the standard of living, existing at the time of separation, in determining alimony." Utah Code Ann. § 30–3–5(8)(c) (Supp.2007). "The general purpose of alimony is to prevent the receiving spouse from becoming a public charge and to maintain the standard of living enjoyed during the marriage, to the extent possible." *Rosendahl v. Rosendahl,* 876 P.2d 870, 874 (Utah Ct.App.1994). Even though Utah law does not require parents to provide health insurance for their adult children, *see* Utah Code Ann. § 78–45–7.15(1) (Supp.2007) ("The court shall order that insurance for the medical expenses of the *minor* children be provided by a parent if it is available at a reasonable cost." (emphasis added)), the trial court did not abuse its discretion in determining that such expense was within Wife's standard of living.

## III. Motion for New Trial

■ ¶ 29 Husband argues that the trial court abused its discretion in denying his motion for new trial based on newly discovered evidence pursuant to rule 59(a)(4) of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 59(a)(4). Specifically, Husband argues that it "does not serve the interests of judicial economy" to require Husband to file a petition to modify the divorce decree when, after trial but before the judgment and decree were entered, Wife's family health insurance premium reduced from $556 to $74 per month. Because Wife's insurance premium did not change until several months after trial, the trial court did not abuse its discretion in denying Husband's motion.

■ ¶ 30 The trial court heard trial testimony that Wife's health insurance premium was $556 per month. The trial court issued its decision in May 2005. Several months later, in September or October of 2005, Wife's insurance provider changed, and her monthly premium fell to $74. "Newly discovered evidence must relate to facts which were in existence at the time of trial and cannot be based upon facts occurring subsequent to trial." *Hancock v. Planned Dev. Corp.,* 791 P.2d 183, 185 (Utah 1990). Be-

cause Wife's premium reduced several months after trial, the evidence was not "in existence at the time of trial," *id.*, and cannot be the basis for a new trial under rule 59(a)(4) of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 59(a)(4). Further, we agree with the trial court that Husband's arguments that the relaxed standards of rule 59(a)(4) in juvenile court proceedings are inapposite in this case, and we do not address them further. In sum, the trial court did not abuse its discretion in denying Husband's motion for new trial.

## CONCLUSION

¶ 31 The trial court erred in classifying Wife's anticipated social security benefits as a marital asset subject to division. We remand to the trial court for the proper consideration of Wife's social security benefits. We affirm the trial court's inclusion of health insurance for the parties' two children in Wife's standard of living computation, and we affirm the trial court's denial of Husband's motion for new trial.

¶ 32 WE CONCUR: JUDITH M. BILLINGS and WILLIAM A. THORNE JR., Judges.