**2015 UT App 15**

## THE UTAH COURT OF APPEALS

A. JASON VELEZ,
Plaintiff and Appellant,
*v.*
ROBERT J. DEBRY & ASSOCIATES, PC,
Defendant and Appellee.

Memorandum Decision
No. 20131080-CA
Filed January 23, 2015

Fifth District Court, St. George Department
The Honorable Jeffrey C. Wilcox
No. 100503975

Michael R. Labrum, Attorney for Appellant

A. Jason Velez, Appellant Pro Se

Lynn P. Heward, Attorney for Appellee

JUDGE JOHN A. PEARCE authored this Memorandum Decision, in
which JUDGES GREGORY K. ORME and MICHELE M. CHRISTIANSEN
concurred.

PEARCE, Judge:

¶1     A. Jason Velez appeals from a district court order
concluding that he could have asserted his wage-payment
penalty claim in a prior arbitration and that his failure to do so
precluded him from asserting that claim in a later court
proceeding. We agree with the district court and affirm.

¶2     Velez practiced law at Robert J. DeBry & Associates
(DeBry) pursuant to a written employment agreement (the
Employment Agreement). On July 9, 2010, DeBry exercised its

contractual right to terminate Velez's employment without cause by giving him sixty days' written notice. After Velez received the termination notice, Velez and DeBry agreed that Velez could keep thirteen of the more than 200 clients whose cases he handled so long as he did not contact the other clients. DeBry paid Velez his salary for the first month of the sixty-day termination period but refused to pay the second month's. DeBry justified its nonpayment by claiming that Velez had violated their separation agreement by contacting clients and by renting a billboard to display a sign announcing his departure.

¶3      Velez demanded in writing that DeBry pay the second month's salary. When DeBry refused, Velez filed a complaint in the district court, asserting causes of action for breach of contract, defamation, and violation of Utah's wage-payment statute. The complaint explicitly sought the award of a penalty equal to sixty days' wages pursuant to Utah Code section 34-28-5.[1]

---

1. The wage-payment statute provides, "Whenever an employer separates an employee from the employer's payroll the unpaid wages of the employee become due immediately, and the employer shall pay the wages to the employee within 24 hours of the time of separation at the specified place of payment." Utah Code Ann. § 34-28-5(1)(a) (LexisNexis 2011). If the employer fails to "pay wages due an employee within 24 hours of written demand, the wages of the employee shall continue from the date of demand until paid, but in no event to exceed 60 days, at the same rate that the employee received at the time of separation." *Id.* § 34-28-5(1)(b)(i). The employee may recover this penalty "in a civil action," which must be brought within sixty days of the date of separation. *Id.* § 34-28-5(1)(b)(ii).

¶4    DeBry moved to compel arbitration because the Employment Agreement contained a clause requiring arbitration of "[a]ny controversy or claim arising out of or directly or indirectly relating to this Agreement or [Velez's] association with [DeBry]." Velez agreed to arbitrate but expressed concern about the arbitration process in a letter sent to the American Arbitration Association (the AAA), which was to conduct the arbitration. In that letter, Velez asserted that he did not believe that all of his claims arose out of the Employment Agreement. He referenced "a minimum of [two] claims" that "are subject to a filing requirement under state statute." Velez confessed that he was "unclear as to how raising the issue in an arbitration setting could affect [those] claims in another venue," and asked for clarification. He also asked that "no adverse action, such as foreclosure of [his] counterclaims be taken" until he could raise them in an appropriate venue. The AAA did not respond to Velez's letter.

¶5    Velez and DeBry participated in an arbitration hearing, which resulted in a written ruling that, among other things, (1) required DeBry to pay Velez the second month's salary and (2) set a mechanism for splitting the fees on Velez's cases that DeBry kept. Velez did not ask the arbitrator to award him the statutory penalty he now contends DeBry owed for failing to pay his salary when due, nor did he renew the concerns expressed in the letter to the AAA that had gone unanswered.

¶6    DeBry filed a motion to confirm the arbitration award in district court. Velez did not oppose the motion but asserted that the court should also impose the statutory penalty and include it in the order confirming the award. The district court heard argument on the motion to confirm and the question of Velez's ability to recover the statutory penalty. The court denied Velez's request to include the penalty in the confirmed award, finding, "I do believe that even though it was statutorily [required that] you've got to bring the cause of action, you did, and then it went

into arbitration. It could have and should have been handled there, so I'm simply going to confirm the arbiter's final award." In other words, the district court found that res judicata prevented Velez from litigating the issue in the district court.

¶7     We review the district court's application of principles of res judicata for correctness. *Gillmor v. Family Link, LLC*, 2012 UT 38, ¶ 9, 284 P.3d 622. Res judicata takes two forms: claim preclusion and issue preclusion. *Macris & Assocs., Inc. v. Neways, Inc.*, 2000 UT 93, ¶ 19, 16 P.3d 1214. For claim preclusion to bar a subsequent cause of action, a party must show that: (1) both cases involve the same parties or their privies; (2) the claim alleged to be barred was raised in the first action or could and should have been raised in the first action; and (3) the first action resulted in a final judgment on the merits. *Id*. ¶ 20.

¶8     Velez does not dispute that the arbitration involved the same parties as his subsequent attempt to have the court award the statutory penalty. Nor does Velez contend that the arbitration did not result in a final judgment on the merits. Velez focuses his argument on the second element, claiming that the district court erred because his statutory wage-payment penalty claim was not one that he could or should have raised in arbitration. Indeed, he argues that he could not have arbitrated the issue, because the arbitrator lacked jurisdiction over the claim.

¶9     Velez roots that argument in the language of Utah Code section 34-28-7. Section 34-28-7 provides, in relevant part, that "no provisions of this chapter can in any way be contravened or set aside by a mutual agreement unless the agreement is approved" by the Utah Antidiscrimination & Labor Division (the Division). Utah Code Ann. § 34-28-7 (LexisNexis 2011). The penalty section of the wage-payment statute explains that an "employee may recover the penalty thus accruing to the employee in a civil action." *Id.* § 34-28-5(1)(b)(ii). Velez reads

these provisions together and concludes that an agreement to arbitrate necessarily contravenes or sets aside the provision allowing the employee to recover the penalty by filing a civil action. In Velez's view, this renders the arbitration clause in his Employment Agreement invalid as to claims arising out of the wage-payment statute unless the Division has approved the clause.

¶10 There are two problems with Velez's reading of the statutes. First, his reading does not comport with the plain language of section 34-28-7. When presented with a question of a statute's meaning, we presume the Utah Legislature chose its words carefully and used each term advisedly and according to its ordinary meaning. *See D.A. v. D.H.*, 2014 UT App 138, ¶ 6, 329 P.3d 828. Here, the Legislature chose to use the terms "contravene[s]" and "set[s] aside" to describe the content of an agreement that would need the Division's approval to be enforceable. *See* Utah Code Ann. § 34-28-7. Thus, the question before us is, "Does an agreement to arbitrate contravene or set aside the ability of an employee to collect the penalty provided for by the wage-payment statute?"

¶11 Velez suggests that his arbitration agreement with DeBry sets aside the wage-payment statute's language providing that an aggrieved employee "may recover the penalty . . . in a civil action." *See id.* § 34-28-5(1)(b)(ii). Velez does not elucidate how arbitrating the claim would run afoul of that provision, nor does he cite any case law to support his argument that arbitrating a statutory penalty sets aside or contravenes the wage-payment statute.

¶12 The United States Supreme Court rejected a similar argument in *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989). *Rodriguez de Quijas* involved investors who sought recovery from their brokers for alleged violations of the Securities Act of 1933 (the '33 Act). The '33 Act provided that

"[n]o action shall be maintained to enforce any liability created [under certain sections of Title 15] unless brought within one year after the discovery of the untrue statement" or material omission. *See* 15 U.S.C. § 77m (1988). The '33 Act also instructed that "[a]ny condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules and regulations of the [Securities and Exchange] Commission shall be void." *Id.* § 77n.

¶13     The *Rodriguez de Quijas* petitioners argued that the arbitration clause in their brokerage agreements required them to waive compliance with section 77m. *See* 490 U.S. at 481–82. The Supreme Court rejected that reading of the statute. The Court noted, "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Id.* at 481 (citation and internal quotation marks omitted). The Court then reasoned that there existed "no sound basis for construing the prohibition in [section 77n] on waiving 'compliance with any provision' of the ['33 Act] to apply to . . . procedural provisions." *Id.* at 482. The Court concluded that "resort to the arbitration process does not inherently undermine any of the substantive rights afforded to the petitioners under [the '33 Act]" and allowed the arbitration clause to be enforced. *Id.* at 485–86.

¶14     Here, Velez has not offered any argument or pointed to any record evidence demonstrating that arbitration of his claim for a statutory penalty would undermine any substantive right the wage-payment statute affords employees. Although Velez's original complaint sought recovery of the penalty and his letter to the AAA referenced the claim, it appears he failed to press that claim in the arbitration proceeding. There is therefore no suggestion in the record that arbitrating the matter would have somehow contravened or set aside Velez's ability to recover the statutory penalty.

¶15    The second problem with Velez's reading of Utah Code section 34-28-7 is that it conflicts with the Federal Arbitration Act's (the FAA) preemption clause. Section 2 of the FAA provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (2012). "Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The Supreme Court has explained that, "[i]n enacting § 2 of [the FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984).

¶16    The United States Supreme Court has employed this reasoning to conclude that the FAA preempted various state law provisions that purported to foreclose the ability of the parties to agree to arbitrate. For example, the Court held that the FAA preempted a California Labor Code provision that provided that claims for unpaid wages could be maintained in a California court even if the parties had entered into an arbitration agreement. *See Perry v. Thomas*, 482 U.S. 483, 492 (1987). The Court has also declared preempted a section of the California Franchise Investment Law that read, "Any condition, stipulation

or provision purporting to bind any person acquiring any franchise to waive compliance with any provision of this law or any rule or order hereunder is void." *Southland*, 465 U.S. at 10, 16 (citation and internal quotation marks omitted).

¶17 Velez acknowledges this case law but attempts to distinguish it, arguing that the United States Supreme Court has held that "state courts cannot 'invalidate arbitration agreements under state laws applicable only to arbitration proceedings'" and that the FAA does not preempt state laws that "'arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.'" (Quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 685–87 (1996).) This language speaks to "generally applicable contract defenses, such as fraud, duress, or unconscionability," which "may be applied to invalidate arbitration agreements without" risking FAA preemption. *Casarotto*, 517 U.S. at 686–87. Although Utah Code section 34-28-7 does not explicitly single out arbitration agreements, if read as Velez urges, it would remove an entire category of claims from the reach of arbitration and conflict with what the Court in *Casarotto* articulated as "the very purpose of [the FAA]"—to ensure that "private agreements to arbitrate are enforced according to their terms." *Id*. at 688 (citation and internal quotation marks omitted).

¶18 When presented with competing interpretations of a statute, we avoid an interpretation that would "render the statute invalid under an explicitly preemptive federal law." *See State v. Mooney*, 2004 UT 49, ¶ 13, 98 P.3d 420. If we were to conclude that an agreement to arbitrate the statutory penalty of the wage-payment provisions circumvents or sets aside those provisions, section 34-28-7 would likely be preempted under the FAA. This lends support to our ultimate conclusion that the Employment Agreement's arbitration provision, when applied to Velez's attempt to recover the wage-payment penalty, neither

circumvents nor sets aside the protections of Utah Code section 34-28-5.

¶19     The Employment Agreement required Velez and DeBry to arbitrate "[a]ny controversy or claim arising out of or directly or indirectly relating" to the Employment Agreement. Velez had the opportunity to pursue his statutory wage-payment penalty claim in the resulting arbitration. He did not avail himself of that opportunity. Velez has not met his burden on appeal of demonstrating that the district court erred in finding that principles of res judicata prevented him from subsequently litigating that claim in the district court. We affirm.

_____